## IN THE NORTHERN DISTRICT COURT
## COOK COUNTY, ILLIONIS

| | |
|---|---|
| **JUSTIN LONDON**<br>Plaintiff. | Case No: |
| v. | Jury Demand |
| **FINRA,**<br>**ETRADE SECURITIES, LLC**<br>Defendants. | |

## COMPLAINT AT LAW

**NOW COMES** Plaintiff Justin London and submits his Complaint at Law against

Defendants FINRA and ETRADE SECURITIES, LLC, in support states:

### Parties

1. Plaintiff Justin London is an individual and resides in Illinois.

2. Defendant FINRA, the Financial Industry Regulatory Authority, is a The Financial

Industry Regulatory Authority (FINRA) is an independent, nongovernmental organization that

writes and enforces the rules governing registered brokers and broker-dealer firms in the United

State headquartered in Washington, D.C.

3. Defendant Etrade Securities, LLC ("Etrade") is a registered broker-dealer

headquartered in Arlington, Virginia.

4. This Court has diversity jurisdiction over this matter pursuant to 28 USC §1332. The

amount in controversy exceeds $75,000. Venue is proper pursuant 28 U.S.C. §1391(a) as all

transactions and events pertaining to this matter occurred in Cook County, Illinois.

### Allegations

5. Etrade acquired Plaintiff's account from HarrisDirect in 2006, but did not obtain any

1

original signed agreements from HarrisBank or obtain any signed agreements from Plaintiff after the transfer.

6.     On February and/or March 2020, without actual notice to the plaintiff, Etrade liquidated most plaintiff's written long-dated put option positions on large well-established companies such as Amazon, Apple, Tesla, Berkshire Hathaway, and Chipotle.   Prior to February/March 2020, Plaintiff had always been contacted by phone by Etrade pertaining to margin calls and plaintiff had always resolved the calls by either transferring additions funds voluntarily closing out positions, and/or taking offsetting positions to bring the account out of the call.    The liquidations by Etrade in Februrary/March 2020 were not authorized or consented to by plaintiff and caused substantial realized losses.

7.     On June 5, 2020, Plaintiff submitted a claim, Case 20-01792, against Etrade with FINRA involving unauthorized margin liquidation of his positions that caused substantial losses to plaintiff.   The claims include, but are not limited to, common law and statutory fraud under the Illinois Securities Act 815 ILCS 5/12(F)-(I), violation of Rule 3010, failure to supervise, negligence, respondeat superior/control person liability, and promissory estoppel.

8.     On September 25, 2020, Etrade provided its FINRA Rule 12506 responses to the Discovery Guide Document Production List.   Documents Bates labelled ET000001-ET001421 and 26, recorded telephone calls, were produced.

9.     On November 4, 2020, an Initial Pre Hearing Conference (IPHC) Scheduling Order was entered by the panel after conducing a telephonic hearing in which the parties agreed to scheduling and hearing deadlines.   *Exhibit B*.    The discovery cutoff date, the last date to serve discovery requests was December 31, 2020.   The parties agreed to the discovery response date: "Responses to discovery requests are due within 60 days from the date the discovery request is received in

accordance with Rules 12507 and 13507 of the Code of Arbitration Procedure." *Exhibit B*.   The

in-person arbitration hearing date was set to May 25, 2021.

10. FINRA Rule 12507/13507 state:

Unless the parties agree otherwise, **within 60 days** from the date a discovery request other than the Document Production Lists is received, the party receiving the request **must** either:
(A) Produce the requested documents or information to all other parties by serving the requested documents or information by first-class mail, overnight mail service, overnight delivery service, hand delivery, email or facsimile;
(B) Identify and explain the reason that specific requested documents or information cannot be produced within the required time, state when the documents will be produced, and serve this response on all parties and file this response with the Director; or
(C) Object as provided in Rule 12508 and serve this response on all parties and file this response with the Director.
(2) A party must act in good faith when complying with subparagraph (1) of this rule. "Good faith" means that a party must use its best efforts to produce all documents or information required or agreed to be produced. If a document or information cannot be produced in the required time, a party **must** establish a reasonable timeframe to produce the document or information.

11.  FINRA Rule 4210(g)(5) Opening of Accounts, states:

(A) Members must notify and receive approval from FINRA, or the member's DEA if other than FINRA, prior to establishing a portfolio margin methodology for eligible participants.

(B) Only eligible participants that have been approved to engage in uncovered short option contracts pursuant to Rule 2360, or the rules of the member's DEA if other than FINRA, are permitted to utilize a portfolio margin account. If eligible participants engage in security futures products transactions, approval from the member will also be required pursuant to Rule 2370.

(C) On or before the date of the initial transaction in a portfolio margin account, a member shall:
(i) furnish the eligible participant with a special written disclosure statement describing the nature and risks of portfolio margining which includes an acknowledgement for all portfolio margin account owners to **sign**, attesting that they have read and understood the disclosure statement, and agree to the terms under which a portfolio margin account is provided (see Rule 2360(c)); and

(ii) obtain the **signed acknowledgement** noted above from the eligible participant and record the date of receipt
(*emphasis added.*)

12. On March 3, 2021, FINRA sent a letter postponing all in person arbitration and mediation proceedings due to COVID-19.

13. On March 15, 2021, Etrade's counsel filed a motion to amend the IPHC scheduling order that discovery motions be due 60 days prior to the first day of the evidentiary hearing date and to compel Claimant to produce documents within 60 days.

14. On March 31, 2021, Claimant filed a motion for ruling on jurisdiction and seeking leave to pursue his claims in federal court on the grounds that no signed and binding agreement existed between Plaintiff and Etrade that required Plaintiff to submit to arbitration. Etrade responded that Plaintiff had signed the FINRA submission agreement, attached as Exhibit A, agreed to arbitration, and therefore was subject to FINRA Rule 12100(dd).

15. On April 12, 2021, a telephonic Hearing was held on Etrade's motions to amend and compel and Plaintiff's motion for a ruling on jurisdiction. The panel granted Etrade's motion to amend and compel where Plaintiff was ordered to produce documents responsive to FINRA Discovery list 2 within 28 days of the order.

16. On May 12, 2021, a telephonic hearing was held on plaintiff's motion for ruling on jurisdiction. The panel ruled that FINRA had jurisdiction over this claim due to Plaintiff's submission of the claim and the arbitration terms in the agreement. The panel denied plaintiff's request to be able to withdraw his claims and pursue them in federal court.

17. On May 25, 2021, the parties were ordered by the panel to confer with each other and to propose to FINRA four alternative sets of agreed dates (each date including three consecutive days) for hearing on the merits by June 4, 2021. On June 9, 2021, the parties were again ordered

to confer and propose such dates by June 18, 2021 because an agreement had not been reached by the parties on proposed dates. On June 17, 2021, the parties conferred against and submitted their joint proposed dates. On June 21, 2021, based on the agreed upon proposed dates, the hearing was rescheduled by FINRA to December 16-17, 2021 in Chicago, Illinois with a location to be determined.

18. As part of its discovery requests, Plaintiff served its First Set of Interrogatories dated December 16, 2020 and its First Request for Production dated December 7, 2020. On February 5, 2021, Etrade responded to Plaintiff's First Request for Production and to plaintiff's amended First Set of Interrogatories. On May 10, 2021, Etrade responded to Plaintiff's second set of interrogatories dated March 11, 2021 and provided supplemental production Bates labeled ET001422-ET003575 in response to Plaintiff's First Request for Production.

19. As part of its discovery requests, plaintiff requested that plaintiff produce any and all signed account and margin agreements with plaintiff. Etrade did not produce and was unable to produce any signed agreements containing either plaintiff's handwritten or electronic signature with plaintiff's name because it did not have any. Etrade was fully aware of what a signed agreement was because its account and margin upgrade agreements have explicit signature pages with signature lines. Etrade also referenced plaintiff's signed FINRA submission agreement as the basis to subject plaintiff to the FINRA rules.

20. Plaintiff discussed having a mediation with Etrade to try and resolve the dispute. Until discovery was completed, Etrade's counsel, Meredith Hoffman, told plaintiff that mediation was not ripe. After discovery was completed, Etrade agreed to submit to voluntary mediation and on October , 6 2021, signed a mediation agreement. FINRA appointed a mediator and on October

13, 2021 a mediation session was held on Zoom with Etrade's counsel, Hoffman, plaintiff, and the mediator. Provision 2 under the Terms and Conditions of the mediation agreement states:

> The parties and the mediator "agree not to disclose, transmit, introduce, or otherwise use opinions, suggestions, proposals, offers, or admissions obtained or disclosed during the mediation by any party or the mediator as evidence in any action at law, or other proceeding, including a lawsuit or arbitration, unless authorized in writing by all other parties to the proceeding or compelled by law, except that the fact that mediation has occurred shall not be considered confidential. *Exhibit C.*

21. After plaintiff pointed out that Etrade had no signed account or margin agreements with plaintiff as required by FINRA Rule 4120(g)(5), Etrade's counsel told the mediator in a one on one phone call that she wanted to look for more documents. The mediator did not object and/or tell Hoffman that discovery was over. The plaintiff told the mediator in a call that it was unacceptable that further discovery was being conducted by Etrade during the mediation and the discovery response deadline had long passed. However, the mediator said there was nothing he could do to stop Etrade from looking for more documents. The mediation was paused as Etrade spent a week looking for more documents. On October 20, 2021, Hoffman produced 1,784 pages of new documents Bates labeled ET003576-ET005359.

22. Prior to October 20, 2021, Etrade failed to identify and explain the reason that specific requested documents or information could not be produced within the required time, state when the documents would be produced, and served such response on all parties and file this response with the Director.

23. As part of this production, Etrade created a dummy test account and included a screen shot with a button and associated documents for an option account upgrade. Etrade contended that plaintiff clicked the button and ratified the Etrade Customer Account Agreement when he did. Therefore, Etrade sought to use these documents as evidence at arbitration as evidence and/or an "admission" that plaintiff purportedly clicked the button and thus agreed to Etrade's terms and

conditions.  Moreover, Etrade seeks to use documents related to a second cash account, completely unrelated to the margin account at issue in this case, with a different Etrade account number that is subject to different FINRA rules and Reg T regulations, as evidence that plaintiff ratified an agreement for the margin account. even though the documents do not include a signed agreement, cannot be securely authenticated, the cash account was never used, and has no margin features.

24. Etrade produced the documents in violation of the discovery deadlines that it agreed to in accordance with FINRA Rules 12507/13507 and in violation of the mediation agreement that it signed.  Consequently, plaintiff filed a motion to bar and exclude the documents at arbitration.  Moreover, none of the documents comply with the signed agreement requirements of Rule 4120(g)(5) or meet the definition of an electronic/digital signature as required by the Illinois Uniform Electronic Security Commerce Act ("ESCA"), 5 ILCS 175, which was in effect at all relevant times during this matter until it was repealed on June 25, 2021 by the Illinois Uniform Electronics Transactions Act (UETA), 815 ILCS 333.   Prior to June 25, 2021, Illinois was one of three states that did not adopt UETA.[1]

25.   After the motion was briefed, but prior to ruling on plaintiff's motion, without explanation one of the panel members unexpectedly withdrew.  FINRA replaced the member with another arbitrator who disclosed he only had experience with two FINRA arbitration and included plaintiff's case as one of them even though he had not been involved yet.  Without explanation or a hearing on the matter, the panel with the new member denied plaintiff's motion.   Plaintiff filed

---

[1] The other states were New York and Washington.  The clicking of button is not a signature, but part of a process, and not included in the plain meaning of a signed agreement pursuant to FINRA Rule 4120(g)(5) or in the definition of a electronic signature under the ESCA as it is not a symbol executed or adopted (e.g. writing ones name or initials with a digital pen next to an X or /s/ symbol) or a security procedure for the purpose of authenticating a user.  Moreover, Etrade did not use any public/private keys or security algorithms as part of secure procedure such as asymmetric cryptography, to be able to even authenticate and validate the user who purportedly clicked a button like on the dummy test screen shot that Etrade created.  No where do the FINRA rules or Illinois law under the ESCA provide that clicking a button constitutes a signed agreement let alone one that meets the requirements of a secure electronic signature that can be authenticated.

a motion for reconsideration to the Director of FINRA and to replace the panel arguing that plaintiff could not get an impartial hearing since the panel was imposing a double standard by subjecting the plaintiff to the FINRA Rules, but not enforcing them against Etrade. Etrade responded and plaintiff filed a reply on November 30, 2021.

26. Without leave from the panel to file such a sur-reply to plaintiff's reply and without actually filing a motion that plaintiff can respond to, Etrade's counsel filed a sur-reply on December 1, 2021 arguing and seeking to have the Director of FINRA dismiss the case against plaintiff. Realizing that Etrade and FINRA, through the appointed panel, will not follow the FINRA rules that plaintiff is subjected to, plaintiff seeks declaratory injunctive relief to prevent further prejudice to plaintiff.

## COUNT I
## DECLARATORY JUDGMENT AND
## RELATED INJUNCTIVE RELIEF
(against Etrade and FINRA)

1-26. Plaintiff reallages and incorporates paragraphs 1-26 as fully forth set herein.

27. Plaintiff brings this cause of action against Defendants Etrade and FINRA seeking a declaration as a matter of law that Etrade violated FINRA discovery rules 12507/13507, IPHC order, and the mediation agreement and therefore Etrade is in breach of agreement with plaintiff to comply with all FINRA rules, codes, and procedures.

28. Plaintiff seeks a declaration as a matter of law that Etrade does not have a valid enforceable signed account or margin agreement within the plain meaning of FINRA Rule 4120(g)(5) and the Illinois ECSA which was in full force and effect at all relevant times.

29. Plaintiff seeks a declaration as a matter of law that Etrade is subject to all applicable FINRA rules and laws and that such rules are to be enforced by FINRA, including, but not limited

to discovery rules 12507/13507 and that documents Bates labeled ET003576-ET005359 must be barred and excluded from any arbitration hearing.

30.  Plaintiff seeks a declaration as a matter of law that Etrade did not fully and strictly comply with all applicable FINRA, federal, and state laws at the time it liquidated plaintiff's positions without authorization, notice, and consent, including, but not limited to, FINRA Rule 4120(g)(5), Illinois Securities Act 815 ILCS 5/12, and the Securities Exchange Act of 1934 10b-5.

31.  Plaintiff seeks a declaration as a matter of law that the FINRA panel has imposed a double standard by enforcing the FINRA rules on plaintiff, but not enforcing the FINRA rules on Etrade and therefore has shown unfairness and/or bias that is prejudicial to plaintiff.

32.  Plaintiff seeks a declaration that an unsigned agreement for a separate cash account cannot be used to ratify an unsigned agreement pertaining to the terms and conditions for a different margin account at issue.   Plaintiff seeks a declaration that clicking a button without any secure procedure for user authentication and verification (e.g. use of public/private keys) does not constitute a signature under the meaning of signed agreement of FINRA Rule 4120(g)(5) and the Illinois ECSA.

33.  Plaintiff seeks an injunction against any arbitration proceeding until the panel is replaced by FINRA and the FINRA rules are enforced.

34.  Until such an injunction is imposed, Plaintiff will be sustain irreparable injury and does not have an adequate remedy at law since the panel has already ruled that plaintiff is subject other FINRA Rules, Etrade can use documents produced in violation of the discovery rules and their own IPHC order and disregard the fact that they do not constitute a valid signed agreement

under the law. Thus, plaintiff will be severely prejudiced by a partial panel and/or a panel that will not follow and/or does not understand the FINRA rules and law.

WHEREFORE, Plaintiff prays for declaratory judgment that FINRA Rule 12507/13507 and 4120(g)(5) are in full force and effect, that Etrade is in violation of these rules, that Etrade does not have a legally enforceable signed account or margin agreement with plaintiff, a preliminary injunction prohibiting any arbitration from proceeding until the FINRA rules are enforced and the panel is replaced by FINRA, and for any other relief that this Court deems just and equitable.

**COUNT II**
**BREACH OF CONTRACT**
(against Etrade and FINRA)

1-26. Plaintiff realleges and incorporates paragraphs 1-26 as fully forth set herein.

35. Etrade breached their agreement with plaintiff when they submitted to arbitration and mediation. Etrade agreed to follow and adhere to FINRA Rule 12507/13507 and agreed not to use alleged "admissions" disclosed during mediation in arbitration. Etrade is using the dummy test screen shots and related documents as an "admission" by plaintiff that he ratified the Etrade Customer Account Agreement when he purportedly clicked a button.

36. FINRA and/or their appointed panel agreed to enforce the FINRA Rules that they require the parties who submit to FINRA arbitration to follow and be bound to. FINRA breached this agreement when the panel allowed Etrade to violate FINRA discovery rules and the mediation agreement to the prejudice of plaintiff.

37. Etrade agreed that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules. Furthermore, Etrade as a registered broker-dealer, Etrade is subject to FINRA, SEC, and Reg

T rules and regulations.

38. As a result of Etrade's and FINRA's breach, Claimant has incurred substantial

financial harm and prejudice.

WHEREFORE, Plaintiff prays that:
A. Plaintiff be entitled to rescind the arbitration submission agreement, withdraw his claims from FINRA, and be able to pursue his claims against Etrade in federal court.
B. For compensatory damages including costs and expenses incurred by plaintiff as a consequence of the breach.
C. For any other relief that this Court deems just and equitable.

Respectfully Submitted,

Justin London, Ph.D.
LONDON LAW GROUP
1920 N. Maud, #A
Bar No: 6293251
Chicago, IL 60614
Phone: (312) 909-6170
Fax: (773) 346-1227
Email: jlondonlaw@gmail.com

EXHIBIT A



## FINRA Arbitration Submission Agreement

**In the Matter of the Arbitration Between**

**Names of Claimants**
Mr. Justin  London

**and**

**Names of Respondents**
E*TRADE SECURITIES LLC

The undersigned parties ("parties") understand that an electronic signature below means that the party certifies that the information entered on the form is true and accurate, and that the party agrees to the terms of the following Submission Agreement.

The parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

The parties hereby state that they or their representative(s) have read the procedures and rules of FINRA relating to arbitration, and the parties agree to be bound by these procedures and rules. The parties further agree and understand that the arbitration will be conducted in accordance with the FINRA Code of Arbitration Procedure.

The parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s).

The parties agree to abide by and perform any award(s) rendered. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

### *Electronic Signatures*

By entering your electronic signature below, you are one of the following: (1) the claimant; or (2) a person with legal authority to bind the claimant; or (3) a person with firsthand knowledge of the facts and actual or implied authority to act on behalf of the claimant; or (4) an attorney who has actual or implied written or verbal power of attorney from the claimant to sign on the claimant's behalf and thus, bind the claimant to the terms of the Submission Agreement as if the claimant signed the form personally.

| Claimant | Signature | Capacity | Date |
|----------|-----------|----------|------|
| London | /s/ Justin London | Claimant | 06/05/2020 |

EXHIBIT B

©2020 FINRA. All rights reserved.  FINRA Dispute Resolution Services

**FINFA.**

## Initial Prehearing Conference Scheduling Order

**Submitted By:** ▮▮▮▮▮▮▮ (On behalf of the arbitration panel)
**Submitted Date:** 11/04/2020 01:44:13 PM EST

**Case ID & Parties:**
***FINRA Dispute Resolution Services***
Initial Prehearing Conference Scheduling Order

**Case Number:** 20-01792

**In the Matter of the Arbitration Between**

| Claimant(s) | VS | Respondent(s) |
|---|---|---|
| Justin London | | E*Trade Securities LLC |

## CONFIRMATION OF INITIAL PREHEARING CONFERENCE

Was an Initial Prehearing Conference held in the above captioned matter?
- ● Yes
- ○ No, but parties jointly submitted an agreement to forgo the IPHC
- ○ No, and parties did NOT jointly submit an agreement to forgo the IPHC

## INITIAL PREHEARING CONFERENCE SCHEDULING ORDER

1. An initial prehearing telephonic conference was held in the above captioned matter on ***11/04/2020***

2. The following arbitrator(s) participated in the hearing:
Chairman: Peter Ordower(Participated ☑)
Panelist: Michael Nathanson(Participated ☑)
Panelist: Anthony Pecora(Participated ☑)

3. The following party representatives participated in the hearing:
Identify Claimant Representatives:

| *Justin London* |
|---|

Identify Respondent Representatives:

| *Meredith Hoffman* |
|---|

4. Office of Dispute Resolution staff attendee:
- ● **The following FINRA Office of Dispute Resolution Staff person participated in the hearing:**
    ***Sequita Bonsu***

©2020 FINRA. All rights reserved.          FINRA Dispute Resolution Services

○  Not applicable

## CONFIRMATION OF THE PANEL

5. Did the parties accept the Panel's composition? (If not, please explain.)

● **Yes**

○  No

○  Not applicable

## PLEADINGS

6. For cases in which a respondent has failed to submit an answer (an unresponsive party), the Panel has reviewed the service history for that respondent and finds that:

○  Service is complete and sufficient upon the unresponsive party.

○  Service is not sufficient upon the unresponsive party and the claimant is directed to personally serve the unresponsive party with a copy of the statement of claim and notice of the hearing, and file a copy of the affidavit of service with FINRA by _____ or the Panel directs the claimant to complete service by taking the following action:

   By:_____

● **Not applicable**

7. Deficiency pleadings:

○  The following pleadings are deficient (list pleading and deficiency):

● **Not applicable**

8. Deficiency correction deadline:

○  The filing party has until _____ to correct the above deficiencies. If the deficiencies are not corrected by this deadline, the Panel will proceed with the arbitration as though the deficient document had not been filed.

● **Not applicable**

## LATE CANCELLATIONS - PARTY AND ARBITRATOR COMMUNICATIONS

9. Please select the applicable option:

● **All named parties and all arbitrators have agreed to direct party and arbitrator communication solely to alert the Panel that the parties have settled the case, that the claimant has withdrawn the claim, or that the parties jointly agreed to postpone the hearings. This arrangement prevents arbitrators from unnecessarily traveling to a cancelled hearing.**
   **NOTE: If this option is selected, party representative and Panel email addresses will be automatically added to this IPHC order after it is submitted.**

©2020 FINRA. All rights reserved.    FINRA Dispute Resolution Services

**The email addresses for party representatives and all arbitrators solely for purposes of late cancellation notices are as follows:**

**Party Representatives**
**Meredith Hoffman**
**Justin London**



**Arbitrators**

**Assigned Staff**

○ Parties and arbitrators do not agree to voluntary direct communication between the parties and arbitrators. Parties should not communicate with any member of the Panel except in the presence of all parties or representatives. All correspondence and pleadings must be sent to the FINRA Dispute Resolution staff and served on all parties via the DR Portal.

## ARBITRATION HEARING DATES

10. Will the arbitration hearing(s) be telephonic?

○ Yes

● **No**

○ Not applicable

11. Hearing session dates:
*If hearing dates are intended to run consecutively, enter the first scheduled hearing date, then enter the number of additional consecutive business days to be reserved and press the "Add Dates" button. Additional specific hearing date ranges can be entered below the first range of dates.*

● **The first scheduled hearing session in this matter will begin on _05/12/2021_ at _09:00 AM Central Time Zone_**

  **Additional dates reserved:**

  **on _05/13/2021_ at _09:00 AM Central Time Zone_**

  **on _05/14/2021_ at _09:00 AM Central Time Zone_**

○ Not applicable

12. If the parties agreed upon dates beyond the period anticipated by FINRA in expedited cases, did Claimant(s) acknowledge on the record that the parties' agreement to these dates constitutes a waiver of Claimant's request for expedited proceedings?

○ Yes

○ No

● **Not applicable**

**Postponement Fee**

©2020 FINRA. All rights reserved. FINRA Dispute Resolution Services

FINRA charges a postponement fee for all postponed hearings equal to the applicable hearing session fee. The arbitrators may allocate the fee to the party or among the parties that agreed to or requested the postponement. FINRA will not charge this fee if the parties advise FINRA that they have reached a final settlement and the case can be closed.

**Payments to Arbitrators - Postponements or Cancellations within 10 Days of a Hearing**

Separate from the above postponement fee, if a party requests and the arbitrators grant, a postponement within ten days before a scheduled hearing session, the party making the request shall pay an additional fee of $600 per arbitrator (a total of $1,800 for cases with three arbitrators). This fee also applies if a hearing is cancelled because the parties have settled the case.

To avoid the late cancellation fee, the parties should advise FINRA on or before eleven (11) calendar days before the first scheduled hearing date of the postponement or settlement of the case to avoid the $600 per arbitrator late cancellation fee.

The above paragraph applies to cases filed on or after July 6, 2015.

**DISCOVERY CUTOFF DATE**

13. Discovery cutoff date:

- **Last day to serve discovery requests: _12/31/2020_**
- ○ Not applicable

    Please provide the reason [if known]:

14. Subpoenas and arbitrator orders to non-parties cutoff date:

- ○ Last day to serve subpoenas and arbitrator orders on non-parties in the absence of extraordinary circumstances is _____ days before the first scheduled hearing.
- **Not applicable**

**DISCOVERY RESPONSE DATE**

15. The parties have agreed to the following discovery response date:

- **Responses to discovery requests are due within 60 days from the date the discovery request is received in accordance with Rules 12507 and 13507 of the Code of Arbitration Procedure.**
- ○ The parties have agreed that responses to discovery requests are due _____
- ○ Not applicable

**DATE FOR PREHEARING ON DISCOVERY**

16. Discovery prehearing conference:

○ The Chairperson and parties have reserved _____ at _____ for a prehearing conference to resolve discovery matters.

*(The hearing is calendared at the time this order is served. All parties should reserve these dates in their calendars, and reminders will not be forthcoming.)*

● **Not applicable**


**Payments to Arbitrators - Postponements or Cancellations within 3 Days of a Prehearing**

For all cases filed on or after October 29, 2018: A party or parties who request cancellation of a prehearing conference within three business days of the scheduled conference will be charged a cancellation fee of $100 per arbitrator. This means the fee will be assessed unless there are at least three full business days between the date of cancellation and the date of the scheduled prehearing conference. The party or parties will only be charged this fee for arbitrators scheduled to attend the prehearing conference. Please see Customer Code Rules 12500 and 12501 or Industry Code Rules 13500 and 13501 for more information.


**DISCOVERY MOTIONS - DATES TO FILE OPPOSITION AND REPLY**

17. Final Discovery Motions due:

● **Please specify date: *03/15/2021***

○ Not applicable


18. Opposition due (please select the applicable option):

● **Due within ten (10) days of receipt of the Motion, in accordance with the applicable Code of Arbitration Procedure for Customer or Industry Disputes.**

○ Due within _____ days of receipt of the Motion. Please specify type of Motion (if known):

○ Not applicable


19. Reply due (please select the applicable option):

● **Due within five (5) days of receipt of the Opposition, in accordance with the applicable Code of Arbitration Procedure for Customer or Industry Disputes.**

○ Due with in _____ days of receipt of the Opposition.

○ Not applicable


*(Please allow FINRA at least one week to forward the pleadings to the Panel prior to any conference call)*


**MOTIONS**

20. Motions prehearing conference:

○ The arbitrators and parties have tentatively reserved _____ at _____ for a prehearing date to resolve:

● **Not applicable**


21. Final Motions due*:

©2020 FINRA. All rights reserved. FINRA Dispute Resolution Services

○ Please specify date: _____

● **Not applicable**


22. Opposition due* (please select the applicable option):

○ Due within ten (10) days of receipt of the Motion, in accordance with the applicable Code of Arbitration Procedure for Customer or Industry Disputes.

○ Due within _____ days of receipt of the Mothion. Please specify type of Motion (if known):

● **Not applicable**


23. Reply due (please select the applicable option):

○ Due within five (5) days of receipt of the Opposition, in accordance with the applicable Code of Arbitration Procedure for Customer or Industry Disputes.

○ Due within _____ days of receipt of the Opposition.

● **Not applicable**


*(Please allow FINRA at least one week to forward the pleadings to the Panel prior to any conference call)*

*\*Note on Dispositive Motions: Code of Arbitration Procedure Rules 12504 and 12206 for Customer Disputes and Rules 13504 and 13206 for Industry Disputes govern motions to dismiss. The rules set forth specific timeframes for submitting and responding to motions to dismiss.*


## LEGAL ISSUES AND PREHEARING BRIEFS

24. If prehearing briefs are filed, they must be filed by:

● **Please specify date: *04/22/2020***

○ Not applicable


## WITNESS LISTS

The Codes of Arbitration Procedure outline the parties' obligation to exchange witness lists at least twenty (20) calendar days prior to the first scheduled hearing date via the DR Portal. The Panel requests that, concurrently with the parties' timely exchange of the witness lists, the parties file the witness lists with FINRA via the DR Portal for forwarding to the Panel. The Panel's timely receipt of the witness list will enable the arbitrators to review the witness list in advance of the hearing to determine if the appearance of a witness identified in the witness list may create a potential conflict with an arbitrator or otherwise trigger additional disclosures by an arbitrator. To assist the arbitrators in making these conflict checks, the parties should list the business affiliation of each witness, or other descriptive information.

25. Witness lists due:

● **Please specify date: *04/22/2021***

○ Not applicable

©2020 FINRA. All rights reserved.

## EXPUNGEMENT-ONLY CASES

If the sole topic of this case is the determination of expungement of customer dispute information, please complete the following three questions. Otherwise, select "N/A" for each question.

### Notice to Customer(s)

To ensure that customer(s) know about the expungement request, Claimant(s) is/are ordered to provide notice to the customer(s) in the underlying occurrence(s) and submit evidence of service.

Notice to Customer(s) shall include the following:

- Notice of hearing date(s) and notice of right to participate in the expungement hearing and/or submit a written statement regarding expungement;
- A copy of the Statement of Claim; and
- Information to facilitate appearance at expungement hearing, including FINRA contact information.

26. Claimant(s) is/are ordered to provide notice to customer(s) in the underlying occurrence(s) and submit evidence of service, by:

○ Please specify date: _____

● **Not applicable**

27. BrokerCheck® Report(s):

○ Please select all that apply:

● **Not applicable**

28. Settlement Agreement(s):

○ Please select all that apply:

● **Not applicable**

## OTHER MATTERS

29. Other rulings/deadlines/dates (e.g., extra fees to be deposited, additional prehearing dates, etc.)

● **Please specify:**

> ***Claimant is granted through November 25, 2020 to file an amended statement of claim.***

○ Not applicable

## ASSESSMENT OF FEES

30. If the parties settle this matter with no further hearings, the cost of this IPHC will be borne as follows:

©2020 FINRA. All rights reserved.

- *50*% to Claimant(s), jointly and severally

  *50*% to Respondent(s), jointly and severally

  _____% assessed to _____

  _____% assessed to _____

  _____% assessed to _____

  _____% assessed to _____

○ Not applicable

NOTE: Outstanding forum fees that have not yet been resolved or assessed by the Panel, the parties, or another Rule will be divided equally among the parties.

For hearings scheduled to take place at a location other than one of FINRA's four regional offices (Boca Raton, Chicago, Los Angeles and New York), parties requiring services or equipment including, but not limited to, speakerphones, projectors and screens, need to coordinate directly with the assigned hearing location for use of these services and equipment. All costs to use these services and equipment, outside of a FINRA regional office location, are the responsibility of the party requiring them.

This Order will remain in effect unless amended by the arbitration Panel. However, Direct Party and Arbitrator Communication may be canceled by a party, an arbitrator, or as provided in the paragraph.

**ATTACHMENTS**

There are no attached documents.

EXHIBIT C



FINRA Case Number: 20-01792
Case Name:  Justin London vs. E*Trade Securities LLC

---

# <u>Mediation Submission Agreement</u>

Please submit this agreement to your Mediation Case Administrator at the appropriate FINRA Dispute Resolution Services address listed at the end of this agreement.

### TERMS AND CONDITIONS

1. The undersigned mediating parties hereby submit the matter in controversy to mediation with the undersigned mediator, selected in accordance with FINRA Mediation Rules (Section 14000 of the FINRA Code of Arbitration Procedure (the Code). The mediating parties and the mediator hereby undertake to mediate such matter in controversy, in accordance with the Code, including FINRA Mediation Ground Rules.  Alternatively, the mediating parties may choose to adopt different ground rules for the mediation, to be attached to this Agreement as an addendum.  In that event, however, FINRA may decline to administer the mediation.

2. Mediation is intended to be private and confidential.  The parties and the mediator agree not to disclose, transmit, introduce, or otherwise use opinions, suggestions, proposals, offers, or admissions obtained or disclosed during the mediation by any party or the mediator as evidence in any action at law, or other proceeding, including a lawsuit or arbitration, unless authorized in writing by all other parties to the proceeding or compelled by law, except that the fact that a mediation has occurred shall not be considered confidential.

   The parties and the mediator agree that, unless all parties and the mediator agree otherwise in writing, the mediator will be disqualified as a witness, consultant, or expert in any pending or future investigation, action, or proceeding related to the subject matter of the mediation (including any investigation, action or proceeding that involves persons not a party to this mediation).  The mediator and any documents or information in the mediator's possession will not be subpoenaed in any such investigation, action, or proceeding, and the mediator and parties will oppose any effort to have the mediator or documents subpoenaed.

   Notwithstanding the foregoing, the parties agree and acknowledge that the provisions of this subsection shall not operate to shield from disclosure to FINRA or any other regulatory authority, documentary or other information that FINRA or any other regulatory authority would be entitled to obtain or examine in the exercise of its regulatory responsibilities.

   The mediator shall not transmit or otherwise disclose confidential information provided by one party to any other party unless authorized to do so by the party providing the confidential information.

   Neither FINRA, nor its employees, nor any mediator named to mediate a matter under this Agreement shall be held liable for any act or omission in connection with the mediation administered by FINRA under this Agreement.

Investor protection. Market integrity.     FINRA Dispute Resolution Services     Boca Center Tower 1          t  561 416 0277
Southeast Regional Office           5200 Town Center Circle      www.finra.org
                                    Suite 200
                                    Boca Raton, FL
                                    33486-1017



FINRA Case Number: 20-01792
Case Name: Justin London vs. E*Trade Securities LLC

3.  If the mediator is chosen by the mediating parties from outside of the FINRA mediator pool, the mediating parties hereby waive the right to request a self-disclosure statement from the mediator.

4.  The mediating parties agree that any related FINRA arbitration proceedings shall not be stayed or delayed without the consent of all parties to the arbitration proceedings and of all the arbitrators, if appointed.

5.  If requested by the mediator, the mediating parties agree to pay, and to deposit with FINRA, the estimated amounts of, mediator's fees and expenses, at the execution of this Agreement and/or as requested by FINRA.  FINRA shall refund to the parties concerned any excess amounts from the deposits.

    The mediating parties and the mediator agree that the mediator fees shall be:

    **CHECK HERE:**

| | |
|---|---|
| | (A) <<NO MediatorHourlyRate>> per hour as specified in applicable sections of the Code. |
| X | (B)  If other than hourly, fee and terms: <br> **Mediation Settlement Month Program Fees** |

    **CHECK HERE:**

| | |
|---|---|
| | (A)   The mediating parties agree to apportion the mediator's fees and expenses equally among themselves as specified in the Code. |
| X | (B)   The mediating parties agree to apportion the mediator's fees and expenses in the following manner: |

6.  The mediating parties each agree to pay FINRA the Administrative Fee specified in the Code at the execution of this Agreement, if applicable.

7.  The mediating parties understand and agree that FINRA has the right to cease providing the mediation forum, and that the mediator may cease providing the mediation services, if at any time any mediating party fails to submit payments as requested by FINRA.  FINRA may obtain the permission of the mediator to collect the payments on behalf of the mediator, and shall be reimbursed for any expenses incurred for the collection.

8.  The undersigned parties covenant to comply with tax laws, as applicable.

9.  The undersigned parties agree that any Settlement Agreement reached as a result of the mediation shall be binding and enforceable.

10. This Agreement may be executed in one or more counterparts and duplicates, and all such counterparts and duplicates shall together constitute one and the same binding, original document.  Parties may attach additional execution page addendum as necessary, and such execution page addendum shall be part of this Agreement.

11. IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing MEDIATION SUBMISSION AGREEMENT.

FINRA Case Number: 20-01792
Case Name: Justin London vs. E*Trade Securities LLC



## Mediating Parties and Mediator's Signature Page
**Party representatives may sign on behalf of their clients.**

1. E*TRADE Securities LLC       Meredith Hoffman, Esq.

**Name of Party to Dispute      Your Name                    Your Signature**

Legal Representative                    10/06/2021

**Capacity (example individual, representative,     Date
legal counsel, trustee, corporate officer)**

2.

**Name of Party to Dispute      Your Name                    Your Signature**

**Capacity (example individual, representative,     Date
legal counsel, trustee, corporate officer)**

3.

**Name of Party to Dispute      Your Name                    Your Signature**

**Capacity (example individual, representative,     Date
legal counsel, trustee, corporate officer)**

4.

**Name of Party to Dispute      Your Name                    Your Signature**

**Capacity (example individual, representative,     Date
legal counsel, trustee, corporate officer)**

5.

**Name of Party to Dispute      Your Name                    Your Signature**

**Capacity (example individual, representative,     Date
legal counsel, trustee, corporate officer)**