UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN LONDON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:21-CV-06434 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| FINANCIAL INDUSTRY REGULATORY | ) | |
| AUTHORITY, INC., and E*TRADE | ) | |
| SECURITIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Justin London brings this lawsuit against the Financial Industry Regulatory Authority, Inc. (well known by the acronym FINRA) and E*Trade Securities, LLC.[1] London asserts various statutory and tort claims against E*Trade arising out of E*Trade's purportedly unauthorized liquidations of London's trading positions, which allegedly caused substantial losses to London. R. 21, Third Am. Compl.[2] London also challenges—and seeks to vacate—a January 2022 arbitration award issued in a FINRA arbitration between London and E*Trade on the same alleged unauthorized liquidations by E*Trade.

---

[1]The Court has diversity jurisdiction, 28 U.S.C. § 1332, over this case: London is a citizen of Illinois, R. 21 ¶ 1; E*Trade is a citizen of Delaware and New York, R. 20, Section I; and FINRA is a citizen of Delaware, R. 36 at 2 (nonprofit corporation organized under Delaware law), and Washington, D.C., *see* R. 21 ¶ 1 (principal place of business). The Third Amended Complaint alleges that London suffered losses well in excess of $75,000. Third. Am. Compl. ¶ 19 (alleging losses of $208,232.40).

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Both FINRA and E*Trade have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). R. 33, E*Trade Mot.; R. 34, FINRA Mot. E*Trade has also moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on its counterclaim seeking confirmation of the arbitration award. E*Trade Mot.; R. 24, E*Trade Counterclaim. For the reasons discussed in this Opinion, the Defendants' motions are granted.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In 2006, E*Trade acquired London's customer account from another trading firm, HarrisDirect. R. 21, Third Am. Compl. ¶ 4. But, according to London, he never received or executed E*Trade's Customer Account Agreement at the time of transfer; he also never signed a margin agreement. *Id.* ¶ 5.

Sometime after the transfer but before 2015, E*Trade upgraded London to Level 3 margin trading—allegedly without an option-upgrade agreement and despite London not requesting the upgrade. Third Am. Compl. ¶ 7. In December 2015, E*Trade upgraded London to Level 4, despite not having any signed margin or option-upgrade agreement with London. *Id.* ¶ 9. Later, in July 2018, London received an email from E*Trade, allegedly saying that account alerts would be delivered to his email address. *Id.* ¶ 11. That same year, London called E*Trade and informed a representative that he was not receiving any notices (including margin-call alerts) to his

email. *Id*. ¶ 12. The representative told London that he would be switched to paper-less notifications for all notifications. *Id*.

In December 2018, an E*Trade representative informed London that E*Trade had liquidated positions; the liquidation allegedly caused over $120,730.22 in losses to London. Third Am. Compl. ¶ 14. In response, London notified E*Trade via multiple recorded phone calls that he did not authorize these liquidations. *Id*. E*Trade informed London that these liquidations were proper under a signed agreement, but London alleges this agreement does not exist. *Id*.

In March 2020, E*Trade again entered liquidation orders, this time closing five options contracts. Third Am. Compl. ¶ 15. Upon learning of the liquidations via trade confirmations that he received by email, London notified E*Trade that they liquidated a greater amount than was necessary. *Id*. That same month, E*Trade issued a margin call to London's account. *Id*. ¶ 16. London was also not aware of this alert, because he had not received any email notifications from E*Trade. *Id*. According to London, he suspected that E*Trade was engaging in unauthorized liquidations based on trade confirmations that he received. *Id*. Based on this suspicion, in March 2020, London placed a series of limit orders to close positions. *Id*. None were executed. *Id*. E*Trade continued to liquidate positions. *Id*. ¶ 17. E*Trade also continued to issue margin calls without notifying London by phone or email. *Id*. ¶ 18. According to London, the March 2020 unauthorized liquidations caused him to incur losses of $208,232.40. *Id*. ¶ 19.

3

In June 2020, London initiated a claim against E*Trade in a FINRA arbitration based on E*Trade's allegedly unauthorized activity and lack of notices. Third Am. Compl. ¶ 20. When initiating the claim, London signed a FINRA Arbitration Submission Agreement. *See* Third Am. Compl., Exh. A, the FINRA Submission Agreement.[3] In March 2021, E*Trade moved to amend the Initial Pre-Hearing Conference scheduling order. Third Am. Compl. ¶ 26. That same month, London moved for a ruling on jurisdiction, seeking leave to withdraw his claims before FINRA and instead pursue them in federal court. *Id.* ¶ 27. In so doing, London argued that he had mistakenly believed that there was a signed, binding agreement between him and E*Trade with an arbitration provision. *Id.* According to London, he realized this mistake after E*Trade could not produce this signed agreement during discovery. *Id.* But E*Trade countered that London had signed the FINRA Submission Agreement and thus had voluntarily submitted to the arbitration. *Id.* After a hearing, the FINRA panel granted E*Trade's motion to amend. *Id.* ¶ 28. Then, after another hearing, the panel rejected London's challenge to FINRA's jurisdiction, concluding that FINRA had jurisdiction due to London's submission of the claim. *Id.* ¶ 29.

---

[3]In considering a motion to dismiss, a court may review exhibits attached to the complaint without converting the motion to one for summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). "Such documents may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Also, documents that are central to a claim (like the Amended Statement of Claim in the arbitration proceedings, and the Arbitration Award itself) also may be considered at the dismissal-motion stage. *Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

In discovery, E*Trade allegedly failed to produce any signed account and margin agreements with London. Third Am. Compl. ¶ 32. In October 2021, after the discovery deadline had passed, the parties engaged in a mediation. *Id.* ¶ 33. At some point during the mediation, after London had pointed out E*Trade did not produce any signed account or margin agreements with him, E*Trade's counsel told the mediator that she wanted to look for more documents. *Id.* ¶ 34. The mediator paused the mediation, and E*Trade spent a week looking for more documents. *Id.* The next week, E*Trade produced 1,784 pages of new documents (referred to as the Supplemental Production). *Id.* According to London, E*Trade failed to explain why these documents could not be produced before the discovery deadline. *Id.* ¶ 35. As part of the Supplemental Production, E*Trade had created and produced a dummy test account, using it to explain that London must have clicked a button on his own account, and thus ratified E*Trade's Customer Account Agreement when he did. *Id.* ¶ 36.

Because E*Trade produced the documents after the discovery deadline, London moved to bar and exclude the Supplemental Production at arbitration and to amend his complaint to add additional damages based on information that he allegedly gleaned from the new production. Third Am. Compl. ¶ 37. After his motion was briefed, one of the panel members withdrew, and FINRA replaced the member with another arbitrator. *Id.* ¶ 38. The panel then denied London's motion without a hearing. *Id.* In response, London filed a motion with the Director of FINRA for reconsideration of the denial and to replace the panel. *Id.* ¶ 39. In that motion, London argued that he could not get an impartial hearing and that the panel was subjecting him to

FINRA rules, but was not applying the rules to E*Trade. *Id.* But the Director denied the motion. *Id.* London then filed an emergency motion for an injunction to stay the arbitration hearing. *Id.* ¶ 40. That motion also was denied. *Id.*

With the stay motion denied, the arbitration hearing took place during two days in December 2021. Third Am. Compl. ¶ 40. London alleges that the Panel would not state whether FINRA rules applied or that the Panel would follow them. *Id.* According to London, the Panel allowed E*Trade to introduce Supplemental Production documents and to admit the dummy test account into evidence, despite E*Trade admitting the account was a test account and that London had not clicked any button even though the account profile said "Agreed." *Id.* ¶ 42. London also alleges that E*Trade failed to turn over several recorded phone calls from December 2018 with London about the liquidations, and so the panel was unable to consider this evidence. *Id.*

Ultimately, the Panel issued an award (referred to as the Arbitration Award), dismissing all of London's claims against E*Trade. Third Am. Compl. ¶ 43; *see* R. 35-1, Exh. 2, the Arbitration Award. Now, in federal court, London brings claims against E*Trade and FINRA for: declaratory judgment (Count 1); and breach of contract or breach of the covenant of good faith and fair dealing (Count 2). London brings claims against E*Trade for: violations of the Illinois Securities Act of 1953, 815 ILCS 5/1 *et seq.*, and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 *et seq.* (the Fraud Act) (Counts 3 and 9, respectively); promissory estoppel (Count 4); conversion (Count 5); unjust enrichment (Count 6); respondeat superior and control-

person liability (Count 7); and negligence (Count 8). London also seeks vacatur of the Arbitration Award and rescission of the FINRA Submission Agreement (Counts 10 and 11). Both FINRA and E*Trade have moved to dismiss the complaint, and E*Trade has filed a counterclaim seeking to confirm the Arbitration Award.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). In ruling on a motion for judgment on the pleadings, the Court must accept all well-pleaded allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Id.* Judgment on the pleadings is proper if it appears beyond doubt that the non-moving party cannot prove any set of facts sufficient to support his claim for relief. *Id.* In ruling on a motion for judgment on the pleadings, the Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

### III. Analysis

### A. FINRA

### 1. Arbitral Immunity

London sues FINRA in its capacity as the administrator of the arbitration forum for the underlying arbitration. London mainly takes issue with the decisions and rulings that the arbitral panel made in the arbitration. London alleges that the panel allowed E*Trade to violate discovery rules by permitting and considering the Supplemental Production and the dummy test account, Third Am. Compl. ¶¶ 54, 116; and displayed bias by applying FINRA rules against London, but not against E*Trade,

and also by denying all of London's motions, but granting all of E*Trade's. *Id.* ¶¶ 110–11, 118, 120, 123.

The problem with London's monetary-damages claims against FINRA—which center on the panel's decisions during arbitration and the grant and denial of motions—is that damages claims against an arbitral forum are generally barred by arbitral immunity. The Supreme Court has held that judges have absolute immunity "because of the special nature of their responsibilities" and because "the loser in one forum [would otherwise] frequently seek another, charging the participants in the first with unconstitutional animus" or other wrongs. *Butz v. Economou*, 438 U.S. 478, 511–12 (1978). The Seventh Circuit has applied immunity analogous to judicial immunity to arbitrators, arbitration fora, and sponsoring organizations, given their quasi-judicial functions. *See Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1997); *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 843 (7th Cir. 2002) (reasoning that arbitral immunity applies because otherwise arbitrators would be "dissuaded from serving" if they could be "saddled with the burdens of defending a lawsuit"). This immunity covers arbitrators' acts taken within the scope of their "adjudicative duties, even those alleged to be malicious, irregular, or erroneous." *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 902 (N.D. Ill. 2016), *aff'd*, 700 F. App'x 535 (7th Cir. 2017).

Other courts have agreed that immunity applies to arbitrators, arbitration fora, and sponsoring organizations because arbitrators perform a quasi-judicial

function—resolving disputes and hearing evidence—and "should be permitted to make their conclusions … without fear of being sued by dissatisfied litigants." *Seltzer v. Fin. Indus. Regul. Auth.*, 2023 WL 5723460, at *4 (D.D.C. Sept. 5, 2023); *e.g.*, *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1159 (10th Cir. 2007) ("[C]ourts uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taken in connection with administering arbitration."); *Young Habliston v. Finra Regulation, Inc.*, 2017 WL 396580, at *5–7 (D.D.C. 2017) (holding that FINRA is entitled to arbitral immunity); *Prudential Bache-Sec. (Hong Kong) Ltd. v. Nat'l Ass'n of Sec. Dealers Disp. Resol., Inc.*, 289 F. Supp. 2d 438, 440 (S.D.N.Y. 2003) (holding that FINRA's predecessor is immune from suit for jurisdictional determinations made in capacity as arbitrators).

Arbitral immunity extends to "all acts taken by arbitrators within the scope of their adjudicative duties." *Johnson*, 203 F. Supp. 3d at 902. London's claims against FINRA clearly arise out of acts within the scope of the panel's adjudicative duties, including deciding motions, making evidentiary determinations, and its disposition of the arbitration. The acts of which London complains are precisely the type of quasi-judicial acts that courts have deemed covered by arbitral immunity. The Court dismisses the damages claims for breach of contract and breach of the covenant of good faith and fair dealing (Count 2) against FINRA on immunity grounds. London cannot repackage his dissatisfaction with FINRA's dismissal of his claims into a federal claim for damages.

### 2. Declaratory Judgment, Rescission, and Vacatur

Next, London asserts a rescission claim (and mistake-of-fact argument), arguing that FINRA lacked jurisdiction over the underlying arbitration. *See* R. 40, Pl.'s Resp. FINRA Mot. at 5–6. That is, London contends that he was entitled to rescind the FINRA Submission Agreement and withdraw his claims in front of FINRA, under FINRA Rule 12702(b), because he mistakenly believed—and E*Trade did not disabuse him of his mistaken belief—that he had a signed account agreement with E*Trade containing a binding arbitration clause. *See id.* at 5. But the rescission claim (and mistake-of-fact argument) fail as a matter of law.

As a threshold matter, FINRA Rule 12702(b) is not mandatory but permissive, stating that a claimant "*may*" withdraw a claim. (emphasis added). What's more, the Rule explicitly states that a claimant may withdraw "unless: (1) the panel decides otherwise." Here, the panel decided otherwise by denying London's challenge to the panel's jurisdiction.

Moving on, rescission based on London's alleged mistake of fact is unavailable because London fails to adequately allege that he exercised due care. Rescission based on mistake of fact is proper *only* if "the mistake occurred notwithstanding the exercise of due care by the party seeking rescission." *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 199 (Ill. 1992) (cleaned up). London only generally alleges that he supposedly relied on phone calls during which an E*Trade representative represented that a signed agreement existed, and he did not learn an agreement did not exist until discovery. Third Am. Compl. ¶¶ 14, 27, 118; *see also* Pl.'s Resp. FINRA Mot. at 8. But

11

this is not due care. London says nothing about taking any further steps or due diligence that he undertook to confirm whether a contract—that he himself purportedly agreed to and signed, according to the customer service representative—existed before voluntarily submitting to the FINRA arbitration and signing the FINRA Submission Agreement. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) ("In Illinois, a party to a contract is charged with knowledge of and assent to a signed agreement.") (cleaned up). This omission is especially pronounced because London is not a layperson, but a lawyer. London accepted the verbal representation, though he apparently had no memory of signing the agreement, and he left it at that. London's failure to adequately plead due care is fatal to the mistake-of-fact claim and the rescission claim against FINRA.

Next, London argues that arbitral immunity does not apply to his equitable claims—namely, the rescission claim—against FINRA. Pl.'s Resp. FINRA Mot. at 9. But London has failed to adequately state a rescission claim, as already discussed above. In any event, even if it were true that rescission is proper (which it is not), the equitable claims against FINRA—declaratory judgment, rescission, and vacatur—still fail. This is because FINRA is "obviously not a real party in interest" to those equitable claims. *See Int'l Med. Grp., Inc.*, 312 F.3d at 844 n.4; *Chicago Reg'l Council of Carpenters v. Resnick*, 215 F. Supp. 3d 698, 705–06 (N.D. Ill. 2016). The Court agrees with FINRA that it is not a proper party to this suit, nor properly subject to London's equitable claims against it. Contrary to London's assertions, FINRA was clearly not a party (or signatory) to the FINRA Submission Agreement. Rather,

12

FINRA was the arbitral forum or sponsoring organization, a quasi-court, for the parties who *were* the signatories (London and E*Trade) to the submission agreement. *See Legaspy v. Fin. Indus. Regul. Auth., Inc.*, 2020 WL 4696818, at *2 (N.D. Ill. Aug. 13, 2020) (denying injunctive relief because FINRA was not a party to the submission agreement, noting that "reading FINRA as a party would make little sense"). Just as this Court is not a party to a dispute it adjudicates (nor to an appeal), FINRA was not a party to the underlying arbitration, nor is it a proper party to London's equitable claims. All of London's claims against FINRA are dismissed.[5] Because London is already on the Third Amended Complaint, and there is no reason to think that another amendment would fix any of the identified problems, the dismissal is with prejudice.

## B. E*Trade

### 1. Vacatur

London alleges that the Arbitration Award should be vacated because the panel "knew of the governing FINRA rules and legal principles yet refused to apply them or ignored them altogether." Third Am. Compl. ¶ 106; *see also id.* ¶¶ 108–10. London also alleges that the panel displayed bias by subjecting him to FINRA rules, but E*Trade was not held to the rules, *id.* ¶ 111, and by denying his motions and granting E*Trade's motions, *id.* London advances the argument that the panel—and by extension, FINRA—exceeded its authority by "manifestly disregarding the FINRA

---

[5]FINRA argues London improperly labeled this action as a complaint, when it should be styled a "Petition to Vacate." *See* R. 36, FINRA Mot. Dismiss Br. at 1 n.1. The Court need not address this point, given the dismissal of London's claims against FINRA.

rules and applicable law by failing to rule in accordance with the relevant rules and provisions of the law." *Id.* ¶ 113; 9 U.S.C. § 10(a)(4).

It is not easy to vacate an arbitration decision: parties seeking to vacate the decision of an arbitration panel must "clear a high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). And a district court's ability to vacate an arbitration award is "severely limited"; "otherwise, the ostensible purpose for resort to arbitration, *i.e.*, avoidance of litigation, would be frustrated." *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1258 (7th Cir. 1992) (cleaned up); *George Watts & Son v. Tiffany & Co.*, 248 F.3d 577, 579 (7th Cir. 2001) (explaining that an ordinary error does not justify vacatur because otherwise "every arbitration could be followed by a suit ….") (cleaned up).

The rare instance in which a court may vacate an award is where the arbitrators demonstrated a "manifest disregard for the applicable law." *Hughes*, 975 F.2d at 1267. That standard requires more than "mere error in law or failure … to understand or apply the law." *Id.* at 1267; *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008) ("Factual or legal error, no matter how gross, is insufficient to support overturning an arbitration award."). The Seventh Circuit has held that manifest disregard of the law is not a ground to vacate an award "unless [the arbitrator] orders parties to do something that they could not otherwise do legally (*e.g.*, form a cartel to fix prices)." *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1026 (7th Cir. 2013) (cleaned up); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268–69 (7th Cir. 2006) (explaining the Seventh Circuit has confined "manifest

disregard" to cases where arbitrators "direct the parties to violate the law") (cleaned up).

London fails to adequately allege that the arbitration panel directed him or E*Trade to violate the law, or that the panel otherwise manifestly disregarded the law. London contends, among other things, that the panel's rulings against him (and in E*Trade's favor) reflect a failure to comply with known FINRA rules and that the panel erroneously admitted and considered Supplemental Production documents. But these allegations—without more—are not enough to meet the rigorous "manifest disregard" standard. Even if the panel erred in its rulings, mere error does not warrant vacatur. And even if the panel did not explicitly affirm to London whether FINRA rules applied, that type of omission does not mean that the panel did not actually apply those rules, let alone constitute a directive to either party to violate the law. London makes much of the panel's rulings and decisions, equating them with errors. But he does not dispute that the arbitration hearing spanned two days and the panel allowed both parties (including London) to present testimony and evidence before the panel—testimony and evidence that the panel considered, in addition to the pleadings, to reach its decision. *See* Third Am. Compl. ¶ 30; *see also* R. 41, Pl.'s Resp. E*Trade Mot. at 14–15; Arbitration Award at 2. London's attempt at vacatur is a "thinly veiled attempt to obtain appellate review of the arbitrator's decision," which is generally disallowed. *See Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995) (cleaned up).

To the extent that London argues that other grounds for vacatur apply, those arguments fail too. London seems to contend that 9 U.S.C. § 10(a)(2) and (3) of the Federal Arbitration Act require vacatur here. The former subsection allows for vacatur where "there was evident partiality or corruption in the arbitrators," and the latter where the arbitrators "were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(2), (3).

In arguing that he was not provided a fair hearing, London again offers that the panel denied his motions but granted E*Trade's, and allowed E*Trade's dummy test account to be introduced. London also cites E*Trade allegedly failing to produce certain phone recordings (and thus, the panel not being able to consider them); the allegedly insufficient experience of one of the arbitrators; the panel not allowing him to go through an "essential detailed Powerpoint presentation" (even though he read directly from the slides) (R. 41, Pl.'s Resp. E*Trade Mot. at 14); and the panel not allowing him to fully play (and interrupting) "lengthy, but critical" recorded phone conversations at the hearing. *Id.* at 15. These allegations fall well short of constituting proper grounds for vacatur. A panel's refusal to receive relevant evidence (or errors in evidentiary determinations), by itself, does not justify vacatur. *See Hurn v. Macy's, Inc.*, 2017 WL 6539288, at *2 (C.D. Ill. Sept. 5, 2017), *aff'd*, 728 Fed. Appx. 598 (7th Cir. 2018); *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001) ("A fundamentally fair hearing is one that meets the minimal requirements of

16

fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator.") (cleaned up). The alleged mistakes by the panel are the type of bread-and-butter, trial-type decisions made during evidentiary hearings and arbitrations.

Relatedly, London makes much of E*Trade's counsel's comments to the panel during the hearing that (1) counsel too was an arbitrator and (2) "we all know that this case is heading to federal court anyways," referencing London's federal lawsuit. Third Am. Compl. ¶¶ 41, 115. London contends that these comments prejudiced the panel against him, with the latter comment insinuating to the panel that he was challenging its authority and its eventual decision. But these conclusory allegations, without more, do not come close to forming proper grounds for vacatur, including for arbitrator bias or partiality. And though London alleges E*Trade's counsel's comments were intended to influence the panel, London fails to allege the panel was *actually* influenced by the comments (not that an allegation of bias based on those comments would be plausible anyway). To adequately plead evident partiality under 9 U.S.C. § 10(a)(2), London must concretely allege that the partiality was "direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Harter v. Iowa Grain Co.*, 220 F.3d 544, 553–54 (7th Cir. 2000). London fails to do so.

In sum, London fails to plead a proper ground for vacatur, especially against the backdrop of the hearing having been conducted over two days, the panel hearing

testimony and evidence from both parties, and the panel issuing its unanimous decision[6] based on this testimony and evidence (along with the pleadings).

For those same reasons, the Court grants E*Trade's counterclaim seeking declaratory judgment for the confirmation of the Arbitration Award. Even viewing London's allegations in the light most favorable to him, London cannot allege any set of facts that would entitle him to relief on his claims against FINRA and E*Trade, including vacatur of the award. It is worth noting too that London does not appear to address E*Trade's Rule 12(c) motion in his response brief.

### 2. Claim Preclusion and Issue Preclusion

Moving on, claim and issue preclusion[7] bar London's claims against E*Trade. As a threshold note, parties are not entitled to just reargue the merits of original claims that were already presented to an arbitration panel, as London attempts to do here. *Widell v. Wolf*, 43 F.3d 1150, 1151 (7th Cir. 1994). But aside from the vacatur claim, London's other claims against E*Trade are barred by claim preclusion and issue preclusion.[8]

---

[6]It is worth noting that London takes issue with what he characterizes as the inexperience (and misrepresentation of experience) of one of the panel members. Pl.'s Resp. FINRA Mot. at 4; Pl.'s Resp. to E*Trade Mot. at 7. But, this argument is unpersuasive because (among other reasons) the arbitration operated under majority rule, only requiring two of the three panel members to agree on the award. Here, the three panel members unanimously denied all of London's claims against FINRA.

[7]In its briefs, E*Trade used *res judicata* to describe claim preclusion, and *collateral estoppel* to describe issue preclusion.

[8]It is true that claim and issue preclusion are affirmative defenses. So, normally a defendant should bring a Rule 12(c) motion for judgment on the pleadings when raising an affirmative defense. "[B]ut when the district court has all the information it needs to rule on

"Claim preclusion is appropriate when three criteria are met: (1) identity of parties, (2) identity of claims, and (3) a prior final judgment on the merits." *Daza v. State*, 2 F.4th 681, 683 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 763 (2022).[9] The parties are the same as in the arbitration (London and E*Trade). London asserts the same causes of action here (based on the same underlying events) as in the arbitration, including violations of the Illinois Securities Act of 1953 (Count 3); promissory estoppel (Count 4); respondeat superior and control person liability (Count 7); and negligence (Count 8). *See* R.35-1, Am. Statement of Claim. The panel considered and dismissed these same claims on the merits. What's more, London had a full and fair opportunity to litigate these claims. Again, the panel heard both parties' presentations, including London's, comprised of evidence and arguments at the two-day hearing. Counts 3, 4, 7, and 8 are dismissed on claim preclusion grounds.

---

a defense, such as the prior court rulings, defendants may raise affirmative defenses in a Rule 12(b)(6) motion to dismiss." *Tyson v. Mars Wrigley Confectionary U.S., LLC*, 2022 WL 198893, at *1 (N.D. Ill. 2022) (citing *Parungao v. Community Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017)); *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) (observing that when an affirmative defense, like claim preclusion, is "disclosed in the complaint, it provides a proper basis for a Rule 12(b)(6) motion"). In those sorts of settings, courts treat the motion as if it were a motion for judgment on the pleadings.

[9]Illinois law on claim preclusion is the same: "three requirements must be satisfied for res judicata to apply: (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of parties or their privies." *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 8 (Ill. 2016). Courts have held that an arbitration award may serve as a basis for claim and issue preclusion. *See Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 874 (7th Cir. 2005); *see also Pepper Const. Co. v. Palmolive Tower Condominiums, LLC*, 59 N.E.3d 41, 63 (Ill. App. Ct. 2016) ("Generally, arbitration awards have the same *res judicata* and collateral estoppel effect as court judgments." (cleaned up)).

Turning to issue preclusion: issue preclusion applies where "(1) the issue decided in the prior case is identical to the issue in the current case, (2) there was a final judgment on the merits in the prior case, and (3) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior case." *In re: Emerald Casino, Inc.*, 867 F.3d 743, 759 (7th Cir. 2017) (citing *Herzog v. Lexington Twp.*, 657 N.E.2d 926, 929–30 (Ill. 1995)). E*Trade argues that issue preclusion applies to the following claims: declaratory judgment (Count 1); breach of contract (Count 2); conversion (Count 5); and violations of the Fraud Act (Count 9). The arbitration resulted in a final judgment on the merits, and the parties involved in the arbitration (London and E*Trade) are the same as here. As for the first requirement, the issues decided in the arbitration are the same as the ones asserted here and arise from the same set of facts. Although Counts 1, 2, 5, and 9 were not explicitly asserted in London's statement of claim at arbitration, London still had full and fair opportunity to litigate them at arbitration and the panel's decisions on these issues were necessary to its dismissal of London's claims.

Going through the claims, even though London did not explicitly assert a Fraud Act claim (Count 9) at the arbitration, the *allegations* upon which he rests this claim are the same as in the arbitration, and the claim arises from the same set of facts. In the Amended Statement of Claim, London alleged fraud based on E*Trade's alleged failure to notify him about margin calls and unauthorized closing out of London's positions. *See* Am. Statement of Claim at 6–10. The Fraud Act claim relies on the same allegations. *See* Third Am. Compl. ¶¶ 95–105. These allegations were

20

reviewed by the panel at arbitration (and ultimately rejected). The conversion claim (Count 5) also involves the same issues—the unauthorized liquidations—as the fraud claims presented before the panel. *See* Am. Statement of Claim at 6–10. The parties already litigated (and the panel necessarily ruled on) whether E*Trade was authorized to liquidate at the arbitration. Lastly, London's declaratory judgment and breach of contract claims (Counts 1 and 2, respectively) present the issues of whether E*Trade violated FINRA rules via the Supplemental Production (including the dummy test account); whether E*Trade had a valid signed account or margin agreement with London; and whether E*Trade violated laws via its unauthorized liquidations. Again, London already litigated these issues at the arbitration, including by filing a motion to bar and to exclude the Supplemental Production and filing the unsuccessful motion for reconsideration of the motion to bar and to exclude when it was denied. And the other issues under Counts 1 or 2—account or margin agreement and unauthorized liquidations—were also decided by the panel at arbitration.

Lastly, E*Trade also argues that the unjust enrichment claim (Count 6) is precluded by either claim or issue preclusion. R. 35, E*Trade Mot. Dismiss Br. at 4. London did not explicitly assert this claim in the Amended Statement. But, like Counts 1, 2, 5, and 9, London had full and fair opportunity to litigate this claim at arbitration, and the claim is premised on the same underlying issues as the ones that the did litigate before the panel. *See* Third Am. Compl. ¶¶ 76–78. So, at the least, issue preclusion bars Count 6.

### 3. Rescission

21

For the same reasons discussed above, the Court rejects London's rescission claim. London does not allege that he conducted any due diligence to confirm if an agreement with an arbitration provision (purportedly signed by him) existed *before* initiating the arbitration and agreeing to be bound by the panel's decision. London cannot initiate a months-long arbitration process without conducting any diligence on whether he was actually required to arbitrate (and whether an agreement he purportedly signed existed), and then declare mistake of fact after submitting the dispute to arbitration. Nor can London circumvent the finality of the Award (in a federal forum) by claiming ignorance of a fact he should have known, or at minimum, investigated.

## IV. Conclusion

FINRA's motion to dismiss is granted. E*Trade's motion to dismiss and motion for judgment on the pleadings on its counterclaim is also granted: the arbitration award is confirmed. London's claims against the Defendants are dismissed. Final judgment shall be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 29, 2023